# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| JOEL TODD ROBERTS ) | |
| ) | |
| v. ) | No. 2:14-00076 |
| ) | Judge Trauger |
| ) | |
| NANCY BERRYHILL,[1] ) | |
| acting Commissioner of the ) | |
| Social Security Administration ) | |

## MEMORANDUM

### I. Introduction

Pending before the court is the Plaintiff's Motion For Judgment On The Administrative Record (Docket No. 15), and the Defendant's Response (Docket No. 17) in opposition. For the reasons set forth herein, the Plaintiff's Motion is DENIED, and the decision of the Social Security Administration is AFFIRMED.

### II. Procedural Background

This appeal arises out of the Plaintiff's June 2011 application for supplemental security income under the Social Security Act that was denied by the Social Security Administration. (Administrative Record ("AR"), at 68, 168 (Docket No. 11)). The Plaintiff had filed a previous application for benefits, which was heard by an administrative law judge ("ALJ") on May 11, 2010, and denied in a decision issued on June 23, 2010. (*Id.,* at 68, 111-117). In reaching his decision, the ALJ found that the Plaintiff had the severe impairments of "surgery for a fractured hip and chronic back pain," and was limited to the following residual functional capacity

---

[1] Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017.

("RFC"): light work except that he could stand/walk for four hours of an eight-hour workday with normal breaks, but was precluded from all climbing of ramps, ropes and ladders, and must avoid all work hazards, such as moving machinery and heights. (*Id.,* at 68, 113). The ALJ concluded that the Plaintiff could perform the jobs of production inspector, hand packager, and production laborer. (*Id.,* at 68, 117). The Plaintiff did not appeal. (*Id.,* at 68).

With regard to the June 2011 application, after receiving initial denials of the application, the Plaintiff requested a hearing, which was held by another ALJ on March 4, 2013. (*Id.,* at 68, 80-107, 136). The Plaintiff appeared at the hearing with counsel, and testified in support of his claim. (*Id.*)

The ALJ issued a written decision on May 13, 2013, finding that although the Plaintiff's condition was not materially changed since the previous decision, the Plaintiff's residual functional capacity limited him to unskilled sedentary work. (*Id.,* at 68). Nevertheless, the ALJ concluded, the Plaintiff was not disabled. (*Id.*) In reaching his decision, the ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since June 13, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: history of surgery for fractured hip and chronic back pain (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a).
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 4, 1967 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 13, 2011, the date the application was filed (20 CFR 416.920(g)).

(AR, at 70-74).

The Appeals Council denied the Plaintiff's request for review of the ALJ decision (AR, at 1-7), which became the final decision of the Social Security Administration ("SSA"). *Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 2083, 147 L. Ed. 2d 80 (2000). This action, seeking review of that decision, has been timely filed, and the Court has jurisdiction under 42 U.S.C. § 405(g) to adjudicate it.

### III. The ALJ Hearing

At the hearing before the ALJ, the Plaintiff testified that he was 45 years old and had dropped out of school in the eleventh grade. (AR, at 83). The Plaintiff further testified that he was divorced and had lived with his mother and father since 2007. (*Id.*, at 83). According to the Plaintiff, his father was bedridden and his mother was a cancer survivor with back problems. (*Id.*, at 84). The Plaintiff testified that he was a smoker, but had reduced his smoking to four cigarettes

a day. (*Id.*, at 85). The Plaintiff described his past occupation as a laborer in the home construction industry. (*Id.*, at 86-87).

According to the Plaintiff, his most serious medical problem was his back, then his right hip, and then his left shoulder. (*Id.,* at 87-88). The Plaintiff testified that he also suffered from depression, which he said bothered him more than his shoulder and hip. (*Id.*) In describing his back problem, the Plaintiff testified that he was in constant pain, but that the degree of pain varies. (*Id.*, at 90). When his back pain is bad, the Plaintiff testified, he stays in the bed all day. (*Id.*, at 90-91). The Plaintiff rated his pain on a scale of zero to ten, increasing in severity, as an eight on a bad day and a three or four on a good day. (*Id.*, at 91).

The Plaintiff described the accidents in which he had been involved, including an accident that occurred on April 10, 2006 in which his hip was injured when the horse he was riding was struck by a truck. (*Id.,* at 91-92). As a result of that accident, the Plaintiff testified, he could no longer perform the construction work he had performed prior to the accident. (*Id.*, at 92-93). The Plaintiff testified that he still suffered from hip pain, which he rated as a six or seven on a scale of zero to ten. (*Id.*, at 93).

According to the Plaintiff, his shoulder pain began approximately one year prior to the hearing. (*Id.*, at 93). The Plaintiff testified that his shoulder pain occurs about once a month, generally lasting a few days, and that the pain can reach an eight on the ten-point scale. (*Id.,* at 94).

Regarding his mental condition, the Plaintiff indicated that he began going to the Plateau Mental Health Center in October 2010 because he was suffering from depression. (*Id.*, at 95-96). The Plaintiff testified that he tried to commit suicide a year or so after his accident but could not

go through with it. (*Id.*, at 96). Although he was given medications by the doctors at Plateau, the Plaintiff explained, the medications made him sick and did not help. (*Id.*) After a few months, the Plaintiff said he began to see care providers at Personal Growth and Learning Center. (*Id.*, at 96-97). Those care providers focused more on talking to him rather than using drugs, the Plaintiff testified, and he preferred that approach. (*Id.*, at 97). The Plaintiff indicated that he had been taking Seroquel, which was prescribed by Personal Growth providers to help him sleep. (*Id.*) The Plaintiff explained that he did not want a medication that would knock him out because he needed to be able to hear his father in case he was needed during the night. (*Id.*) Although he helped out with his father, the Plaintiff testified, he was limited in that regard by his back pain. (*Id.*)

The Plaintiff then discussed his difficulties with academics as a child and his bouts of depression. (*Id.,* at 99). The Plaintiff explained that the depression led him to cut himself as a child, and that he had cut himself within the last six months. (*Id.,* at 99). The Plaintiff also described difficulties with his mind racing, his lack of appetite, crying practically every day, and being around other people. (*Id.*, at 99-101). The Plaintiff did describe occasional visits with his neighbors. (*Id.*, at 101). In addition, to his back, hip, shoulder, and depression, the Plaintiff testified that his left hand occasionally cramps. (*Id.,* at 102).

The Plaintiff testified that he occasionally helped with housework, such as doing the dishes, feeding his father or vacuuming the house, but had not been able to do yard work since the summer of 2012. (*Id.*, at 103). According to the Plaintiff, his ability to sit and stand varies from day to day, and estimated that on some days, he could sit for 45 minutes to an hour without pain. (*Id.,* at 103-104). The Plaintiff testified that he could walk, on a good day, for about 15

minutes, albeit with a limp. (*Id.*, at 104-05). For the last several months, the Plaintiff said, he had been lying down most of the day. (*Id.*, at 105).

IV. Analysis

A. Standard of Review

This court's review of the SSA decision to deny benefits is "'limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)(quoting *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 405-06 (6th Cir. 2009)). "Substantial evidence" constitutes "'more than a scintilla' but less than a preponderance" and is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In making that determination, the court is to examine the evidence in the record as a whole and "'take into account whatever in the record fairly detracts from its weight.'" *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016)(quoting *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). If the court finds substantial evidence to support the decision, it must affirm and "may not inquire whether the record could support a different decision." *Id.* The court may not resolve conflicts in evidence or decide questions of credibility. *Id.; Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the ALJ fails to follow agency rules and regulations, however, his or her decision is not supported by substantial evidence, even if the ALJ's conclusion may be justified based upon the record. *Miller*, 811 F.3d at 833.

B. The Five-Step Analysis

The Social Security Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether the claimant is disabled within the meaning of the Social Security Act, the ALJ is to apply a five-step sequential analysis set forth in the applicable regulations. *See* 20 C.F.R. § 404.1520(a); 416.920; *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 627-28 (6th Cir. 2016). "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Id.*, at 627 (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009)). The analytical framework is as follows:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Kepke,* 636 F. App'x at 627-28. The burden of proof is on the claimant through the first four

steps of the analysis, but then shifts to the Commissioner, if the analysis reaches the fifth step, to "'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity. . .'" *Id.*, at 628 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004)).

In this case, the ALJ found the Plaintiff was capable of performing unskilled sedentary work. (AR, at 68, 74). The Social Security regulations define "sedentary work" as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

C. Plaintiff's Statement of Errors

1. Error in adopting the prior ALJ decision

The Plaintiff first claims that the ALJ erred in adopting the prior ALJ's opinion denying disability benefits because that ALJ did not consider his mental impairment.

As discussed above, the Plaintiff had filed a previous application for benefits that was denied in a decision issued on June 23, 2010. In that decision, the ALJ found that the Plaintiff had the severe impairments of "surgery for a fractured hip and chronic back pain," and was limited to the following RFC[2]: light work except that he could stand/walk for four hours of an

---

[2] "Residual functional capacity" is an assessment of the claimant's "remaining capacity for work" once his limitations have been taken into account. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. § 416. 945. In determining the RFC, the ALJ is required to consider the combined effect of all of the claimant's ailments. 42 U.S.C. § 423(d)(2)(B). *See also Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014). The RFC is to be based on all relevant medical and other evidence. *Howard*, 276 F.3d at 239; 20 C.F.R. § 416. 945.

eight-hour workday with normal breaks, but was precluded from all climbing of ramps, ropes and ladders, and must avoid all work hazards, such as moving machinery and heights. (AR, at 68, 113). The ALJ concluded that the Plaintiff could perform the jobs of production inspector, hand packager, and production laborer, and was not disabled. (*Id.*, at 68, 117).

In the opinion that is the subject of this appeal, the ALJ described this procedural history, and then stated:

> The claimant chose not to appeal Judge Grissom's decision, but instead protectively filed another application for disability on June 13, 2011. He again proceeded to the hearing level. The claimant was represented by Donna Simpson, an attorney. At a hearing held on March 4, 2013, in Cookeville, Tennessee, the claimant again testified concerning his medical problems. However, upon review of the medical evidence and the hearing testimony, there was no evidence of any material change in his condition. As a result, I find essentially no material change other than I feel that he is limited to unskilled sedentary work, and I arrive at the same conclusion as Judge Grissom, i.e., that the claimant is not disabled, pursuant to Medical-Vocational Rule 201.19, which directs a finding of 'not disabled.'

(AR, at 68).

Although the ALJ indicated that there was no evidence of any material change in the Plaintiff's condition, the clear language of the opinion reveals that he did not "adopt" Judge Grissom's prior opinion. Indeed, the ALJ clearly states that his conclusion about the type of work the Plaintiff is able to do is more favorable to the Plaintiff than the prior opinion. Furthermore, the ALJ clearly considered, and discussed at some length, the Plaintiff's allegations of a mental impairment. The ALJ did not merely adopt the prior ALJ's opinion, and this statement of error is without merit.

2. Error in analyzing the Plaintiff's pain

The Plaintiff argues that the ALJ erred in analyzing his allegations of disabling pain by

rejecting all physicians' opinions in the record, and by misconstruing his testimony at the hearing.

Under Sixth Circuit precedent and the applicable regulations, in analyzing allegations of disabling pain, the ALJ is to determine whether there is objective medical evidence of an underlying medical condition. *Pasco v. Comm'r of Soc. Sec.,*, 137 F. App'x 828, 834-35 (6th Cir. 2005 (citing *Duncan v. Sec. of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986)); 20 C.F.R. § 416.929; Soc. Sec. Rul. 96-7p. If there is objective medical evidence, then the ALJ must decide if it (1) confirms the severity of the alleged pain arising from the condition; or (2) is of such a severity that it can be expected to produce the disabling pain. *Id.*

In evaluating the Plaintiff's subjective complaints about the intensity and persistence of symptoms, such as pain, the ALJ is to consider such factors as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to relieve the symptoms; (5) treatment, other than medication received, to relieve the symptoms; (6) measures used to relieve the symptoms; and (7) other factors concerning functional limitations and restrictions as a result of the symptoms. 20 C.F.R. § 416.929(c); Soc. Sec. Rul. 96-7p.

An ALJ's analysis of the credibility of a claimant is accorded "'great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.'" *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 173 (6th Cir. 2016)(quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). Although subjective complaints of a claimant can support a claim for disability, those claims may be

10

discounted if they are inconsistent with the objective evidence in the record. *Id.*

In his opinion, the ALJ recited the standards set forth in the applicable regulations and applied them as follows:

> As for the opinion evidence, the opinion of Michael T. Cox, M.D., who performed a consultative examination of the claimant in February 2013, at the request of the claimant's representative, is given little weight, as Dr. Cox did not have the benefit of the medical records (Exhibit B22F). In particular, Dr. Cox noted that the claimant had a limp on the right leg when he walked, yet when he underwent a consultative examination by Donita Keown, M.D., in August 2011 (Exhibit B7F), the examiner noted that the claimant was occasionally limping on the left, and other times on the right and he ambulated in an inconsistent pattern. In addition, the limitations assessed by Dr. Cox are inconsistent with the objective diagnostic test results, which have been relatively benign. For instance, lumbar spine x-rays performed in August 2010 showed only mild degenerative disc disease L4-5 and L5-S1 and scoliosis (Exhibit B2F) and Dr. Cox noted that x-rays performed in conjunction with his examination of the claimant showed a hip with an orthopedic pin in good position.
>
> Consultative examiner Joshua D. Hagan, M.D., opined that the claimant would have difficulties performing the tasks in his job as a laborer (Exhibit B13F). Dr. Hagan's statement addresses a vocational issue that is reserved to the Commissioner (Social Security Ruling 96-5p), thus it is given little weight.
>
> State agency medical consultant Celia Gulbenk, M.D., reviewed the claimant's records in December 2011, and found that the claimant could perform a range of medium work, with frequent climbing of ramps and stairs, balancing, stooping, and kneeling, and occasional climbing of ladders, ropes, and scaffolds, crouching and crawling (Exhibit B15F). In giving the claimant some benefit of the doubt, the undersigned gives Dr. Gulbenk's opinion little weight, and finds that the claimant is limited to unskilled sedentary work as defined in the regulations. The claimant's testimony that, if he could get a simple job where he was sitting all day, he could do such a job is supportive of this finding.

(AR, at 72-73).

The ALJ is required to "evaluate every medical opinion and consider the following non-exhaustive factors in deciding what weight to give each opinion: examining relationship, treatment relationship, the extent to which medical signs and laboratory findings support the

11

opinion, the consistency of the opinion with the record as a whole, and the specialization of the doctor rendering the opinion." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156 (6th Cir. 2009)(citing 20 C.F.R. § 416.927(d)).

The ALJ's decision to assign "little weight" to Dr. Cox's opinion is supported by his explanation and the record in this case. Dr. Cox opined that, in an eight-hour workday, the Plaintiff could lift and/or carry 10 pounds occasionally, and less than 10 pounds frequently; stand and/or walk for at least two hours; and sit for about six hours. (*Id.*, at 567). In addition, Dr. Cox opined that the Plaintiff could push and/or pull up to ten pounds with his legs for up to four hours a day, and would need to alternate sitting and standing as needed every 30 minutes. (*Id.*, at 568*)*. Dr. Cox further opined that the Plaintiff could never perform postural activities, but had no manipulative or environmental limitations. (*Id.*, at 569-570).

The records of his medical evaluation, however, do not support these limitations. The x-rays ordered and reviewed by Dr. Cox showed no abnormalities with the Plaintiff's hip, and that his spine was normal with some modest arthritic change between L3 and L5. (AR, at 573-575). Dr. Cox does not otherwise state the basis for his opinion other than the Plaintiff's allegations of pain and the observation of the Plaintiff's limp on the right leg. (*Id.,* at 572-573).

As the ALJ explained, Dr. Cox did not indicate that he had reviewed the Plaintiff's medical records, and had he done so, he would have noted Dr. Keown's notes regarding the Plaintiff's inconsistent limping, and her opinion that the Plaintiff did not provide reliable effort. (*Id.*, at 353-354). Dr. Cox also states in his opinion that no diagnostic tests had been performed on the Plaintiff since 2007. (*Id.*, at 572). A series of x-ray reports in the record reveals otherwise:

– an x-ray of the Plaintiff's spine on April 19, 2009 reveals "[n]o acute fracture or

dislocation," "minimal scoliosis" and "[d]isc space height narrowing at the L4-5 and L5-S1 levels;"

– an x-ray of his spine on June 18, 2009 showed "[n]o significant change. . . [m]ild scoliosis and mild degenerative change at L5-S1, and to a lesser degree L4-L5;"

– an x-ray of his spine on January 26, 2010 showed "[n]o significant change. . . [n]o acute injury of the lumbar spine" and "[m]inor scoliosis possible positional;" an x-ray of his pelvis on that same date showed "[n]o acute skeletal or joint abnormality;" an x-ray of his hip on that same date showed "[n]o acute abnormality;"

– an x-ray of his hip on August 6, 2010 showed "[p]ostoperative change" and "[n]o acute fracture or dislocation;"

– an x-ray of his spine on August 30, 2010 revealed "[m]ild degenerative disc disease, L4-5, L5-S1," "mild scoliosis," and "[n]o acute skeletal or joint abnormality;"

– an x-ray of his spine on May 19, 2011 revealed some "[m]ild scattered degenerative changes," but [n]o significant focal or acute bony abnormality appreciated;" an x-ray of his shoulder on that same date revealed that it was "normal;" and

– an x-ray of his shoulder on June 16, 2011 showed it was "normal."

(*Id.*, at 12-17, 19, 21, 23, 25, 27). The ALJ's decision to assign little weight to the opinion of Dr. Cox is supported by substantial evidence. In any event, the ALJ's conclusion that the Plaintiff was limited to sedentary work incorporates much of the Dr. Cox's opinion regarding the Plaintiff's exertional limitations.

The ALJ's explanation for assigning little weight to Dr. Hagan's opinion is also substantially supported. In an evaluation of the Plaintiff conducted on November 5, 2011, Dr. Hagan does not identify specific limitations caused by the Plaintiff's condition, but simply concludes as follows :

> This is a 44-year old male who has had a prior accident resulting in hip and back pain. He has progressive back pain that seems to be limiting his ability to walk and move, in addition to his right hip pain limiting the amount that he can walk and activities that he can do. He does not have any clear chronic major injury to his left rotator cuff and no clear symptoms. Given his job as a laborer, he would by this assessment appear to have difficulties performing these tasks given his degenerative changes to his back and hip.

(*Id.*, at 391). As the ALJ explained, a physician's opinion on issues reserved to the Commissioner, such as whether an individual has the ability to do past relevant work, are never entitled to controlling weight or given special significance. Soc. Sec. Rul. 96-5p; 20 C.F.R. § 416.927(d). In any event, the ALJ's conclusion that the Plaintiff was unable to perform his past relevant work as a steel work and carpenter is consistent with Dr. Hagan's opinion that he could no longer work as a laborer.

As for Dr. Gulbenk's opinion that the Plaintiff could perform a range of medium work, the ALJ's decision to assign it little weight actually works in favor of the Plaintiff. In concluding that the Plaintiff was limited to unskilled sedentary work, the ALJ explained that he was giving the Plaintiff the benefit of the doubt. (*Id.,* at 73). The Plaintiff has not shown any error by the ALJ in that regard.

The Plaintiff argues that the ALJ's conclusions are inconsistent with the the x-rays described above showing mild degenerative disc disease and mild scoliosis, as well as the records indicating that emergency room doctors administered pain medication to the Plaintiff during several of his emergency room visits. This evidence is not sufficient, however, to undermine the ALJ's conclusion that the Plaintiff's symptoms are not as severe as he alleges.

The Plaintiff also argues that the ALJ misconstrued his hearing testimony by stating that the Plaintiff testified he could perform a job where he was sitting all day. The court agrees that

the Plaintiff's testimony in that regard is ambiguous:

> Q. What if you were to get a simple job where all you had to do is sit all day where you could get up and move around, would you take something like that?
>
> A. If I could, yes.
>
> Q. If you could do it or if you could –
>
> A. If I could do it, yes. It's just sitting and – I'm constantly in pain.
>
> Q. Okay.
>
> A. It eases off for a little bit and then comes back hard.

(AR, at 87). That the Plaintiff does not agree he is able to do sedentary work, however, does not detract from the ALJ's opinion, which is otherwise supported by substantial evidence.

### 3. Error in analyzing the Plaintiff's mental limitations

The Plaintiff also argues that the ALJ erred in assessing his mental limitations. The ALJ determined that the Plaintiff's depressive disorder and generalized anxiety disorder were not severe impairments. In reaching this finding, the ALJ applied the evidence in the record in the context of the four broad functional areas set out in the disability regulations for evaluation of mental disorders:

> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant reported that he had no problems performing personal care; he cooked, drove, shopped for groceries and was able to manage money. During a consultative psychological evaluation by Roy Bilbrey, Ph.D., in February 2013, the claimant reported that he spent time taking care of his bedridden father, and that he also watched television, washed dishes, and completed laundry chores. He also performs some outdoor work, as he told his mental health clinician in April 2012 that he had helped his elderly neighbor pull out a tree stump and he was working in the garden (Exhibits B3E, B16F, and B21F).
>
> The next functional area is social functioning. In this area, the claimant has mild

limitation. The record shows that the claimant retains the capacity to interact appropriately and communicate effectively with others. The claimant told Dr. Bilbrey that he occasionally talked to his neighbors, and his son visited him (Exhibit B21F). The claimant is apparently able to function in an appropriate manner in the public domain in such places as doctor's offices, grocery stores, and other facilities. The claimant demonstrated no abnormal social behaviors during the hearing.

The third functional area is concentration, persistence or pace. In this area, the claimant has no limitation. The records shows that the claimant's concentration skills allow for the completion of assigned tasks. At the hearing, the claimant was able to understand and follow the hearing proceedings and all lines of questioning. The claimant was able to complete all of the testing procedures during the psychological consultative examination by Dr. Bilbrey, and he reported that he spent time watching television, which suggests that he is able to understand and follow television programs. By virtue of the claimant's ability to drive a car, cook, and manage money, he has demonstrated the ability to at least successfully perform simple, routine, one to two step tasks.

The fourth functional area is episodes of decompensation. In this area, there is no evidence that the claimant has experienced any episodes of decompensation.

Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 416.920a(d)(1)).

The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 9608p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis.

(AR, at 71-72).

Later in the opinion where he explains the finding regarding the Plaintiff's RFC, the ALJ assessed the medical opinions relating to Plaintiff's mental condition as follows:

> Little weight is given to the opinion of Roy Bilbrey, Ph. D., who performed a consultative psychological examination of the claimant in February 2013, at the request of the claimant's representative. Among other limitations, Dr. Bilbrey assessed that the claimant had marked limitations in all of the following work-related mental functions: maintaining regular attendance and being punctual within customary, usually strict, tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; dealing with normal work stress; and maintaining socially appropriate behavior. These limitations are inconsistent with the Global Assessment of Functioning score of 58 that Dr. Bilbrey assigned to the claimant (Exhibit B21F). According to The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), Global Assessment of Functioning (GAF) scores between 51 and 60 indicate only moderate symptoms OR moderate difficulty in social, occupational, or school functioning.[3]
>
> State agency psychological consultant M. Candice Burger, Ph.D., reviewed the claimant's records in July 2011 and found that the claimant had no severe mental impairments (Exhibit B4F). State agency psychological consultant P. Jeffrey Wright, Ph.D., reviewed the claimant's records in October 2011, and agreed with Dr. Burger's assessment (Exhibit B12F). The opinions of Dr. Burger and Dr. Wright are given considerable weight, as they are consistent with the mental health treatment records and examination findings (Exhibit B4F).

(*Id.*, at 73).

---

[3] The GAF score is a subjective determination that reflects the clinician's judgment of the individual's overall level of functioning. *Bowman v. Comm'r of Soc. Sec.*, 2017 WL 1065553, at *1 (6th Cir. Mar. 21, 2017)(citing *Deboard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006)). During the time period at issue here, a GAF score of 41-50 indicated "'serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006)(quoting DSM-IV-TR at 34). A GAF score of 51-60 indicated "'[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).'" *Id.* The Sixth Circuit has explained that "[a] GAF score may help an ALJ assess mental RFC, but it is not raw medical data." *Id.,* at 503 n.7. "Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Id.*

The Plaintiff contends that the ALJ erred in assigning little weight to Dr. Bilbrey's opinion without discussing the records of his treating psychologists or psychiatrists from Plateau Mental Health Center or Personal Growth and Learning Center. Having reviewed those records, the court is not persuaded that they undermine the ALJ's finding. Those records indicate that the Plaintiff was diagnosed with depression and anxiety disorder by the Plateau Mental Health Center, and received counseling and prescriptions for certain medications, but discontinued treatment at that facility in March, 2011, because his care providers there did not help him by giving him the Xanax he requested. (*Id.*, at 261-271, 363-371). In February, 2012, the Plaintiff sought treatment from the Personal Growth and Learning Center where he also received counseling and prescriptions for medications. (*Id*, at 50-55, 406-461, 607-615).[4] Although the Plaintiff points to many of the statements made by him during these treatment sessions as evidence of the severity of his condition, he does not cite a physician's opinion of his condition in these records that undermines the ALJ's assessment of Dr. Bilbrey's opinion.

The ALJ's assessment of Dr. Bilbrey's opinion is supported by substantial evidence. The ALJ appropriately determined that the opinion was entitled to less weight because it was internally inconsistent. *See Bowman v. Comm'r of Soc. Sec.,* 2017 WL 1065553, at *6 (6th Cir. Mar. 21, 2017)(Opinion entitled to less weight because GAF score and examination narratives were inconsistent). Dr. Bilbrey also opined that the Plaintiff had only "slight" or "moderate" limitations in 21 of 25 separate areas, which is largely consistent with the ALJ's conclusion that Plaintiff's mental impairments were non-severe. (AR, at 563-564).

---

[4] The court notes that the Plaintiff has not cited to any treatment records supporting his hearing testimony that he had cut himself.

The Plaintiff also argues that the opinion of Dr. Burger should have been given little weight because it was rendered without the benefit of Plaintiff's subsequent treatment records. A review of the subsequent treatment records, however, does not indicate that the Plaintiff's condition worsened to any appreciable degree. (*Id.*, at 50-55, 409-461, 424-431,576-599, 607-615). For example, the Plaintiff's GAF scores reflected in those records ranged from 45 to 56. (*Id.*)[5] The ALJ's determination that the Plaintiff's medical impairment was non-severe is supported by substantial evidence.

4. Error in failing to call a vocational expert

Finally, the Plaintiff argues that the ALJ erred in failing to call a vocational expert ("VE") to testify at the hearing as to the effect his non-exertional impairments of pain and mental condition had on his ability to perform a full range of sedentary work. As set forth above, the ALJ concluded that the Plaintiff had the residual functional capacity to perform the full range of sedentary work, and that his allegations of pain and psychological restrictions did not impose any limitations beyond that defined category. (AR, at 70-74). As a result, the ALJ explained that the applicable regulations provide that the Plaintiff is not disabled because there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, considering his age, education, work experience, and RFC. (*Id.,* at 74 ("Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.19.")). *See* 20 C.F.R. §§

---

[5] *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)("Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental capacity to hold at least some jobs in the national economy.")

19

416.969, 416.969a. The ALJ's finding that the Plaintiff had no non-exertional limitations as part of his RFC was supported by substantial evidence, and therefore, the testimony of a VE was unnecessary. *See, e.g., Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670–71 (6th Cir. 2009). Thus, the ALJ did not err in failing to call a VE to testify at the hearing. In sum, the Court concludes that the decision of the Social Security Administration is supported by substantial evidence on the record as a whole, and should be affirmed.

V. Conclusion

For the reasons set forth herein, the Plaintiff's Motion For Judgment On The Administrative Record (Docket No. 15) is denied.

It is so **ORDERED.**

Enter this 13th day of June 2017.

_____
ALETA A. TRAUGER
U.S. District Judge